UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

|  |  |  |
|---|---|---|
| HEMANT KHATRI, | : | |
| | : | Case No. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **COMPLAINT** |
| NDTV ETHNIC RETAIL LIMITED, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

Plaintiff, Hemant Khatri ("Plaintiff" or "Mr. Khatri"), by and through his attorneys, as and for his Complaint against defendant NDTV Ethnic Retail Limited, alleges as follows:

### NATURE OF THE ACTION

1.      This action seeks over $1,000,000 in damages caused by the defendant's fraudulent conduct arising from the unauthorized use of the plaintiff's trademarks and other intellectual property and from formation and operation of plaintiff's business under a memorandum of understanding.

### JURISDICTION

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and because this action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 et seq., and, accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1338(a).

**VENUE**

3.      The venue of this matter is appropriate in this district under 28 U.S.C. §
1391(b)(3) because defendant is subject to the court's personal jurisdiction with respect to this
action in this judicial district, and, pursuant to 28 U.S.C. 1391(c)(3), because defendant is not a
resident in the United States it may be sued in any judicial district.

**PARTIES**

4.      Plaintiff is a resident of New Jersey and maintains a principal place of business at
948B Village Drive W, North Brunswick, NJ 08902.

5.      Defendant NDTV Ethnic Retail Limited ("Defendant" or "NDTV") is an entity
incorporated under the Companies Act, 1956, of the Republic of India, and maintains a
registered office at 207, Okhla Industrial Estate, Phase – 3, New Delhi – 110 020, Republic of
India.

6.      NDTV is engaged in the ecommerce business of sale of products on
www.indianroots.com (the "Website"), an online shopping site with a range of apparel, home
products and accessories by designers and craftsmen having roots in India.

7.      Launched in 2013, the Website showcases over 100 Indian designers and 700 plus
Indian brands, and has a worldwide customer base with India and the United States being the
largest markets.

8.      The equity of NDTV is directly held by NDTV Worldwide Limited (14.98%
equity ownership), NDTV Convergence Limited (24.20% equity ownership) and NDTV
Lifestyle Holdings Limited (45.78% equity ownership).

9.      The beneficial owner of NDTV is New Delhi Television Limited.

10.     New Delhi Television Limited is an Indian public company, and its primary business is providing Indian commercial broadcasting television on three national news channels NDTV 24x7, NDTV India and NDTV Profit.

## BACKGROUND FACTS

11.     In 2013, Mr. Khatri sought to open a retail store in Chicago, Illinois, to sell ethnic Indian wear products such as men and women apparels, designer wear and accessories under a certain brand name: Ethnicity (the "Business").

12.     In late December 2013, Mr. Khatri first visited the Website.  Through the Website, Mr. Khatri initiated a communication with NDTV to inquire about a distributorship of NDTV's products and to seek advisory services for the Business.

13.     On January 30, 2014, Winky Lamba of NDTV responded to Mr. Khatri's communication, and Ms. Lamba and Mr. Rahul Narvekar, the Chief Executive Officer of NDTV (the "CEO"), engaged in substantive discussions concerning the Business at various times in January through March 2014.

14.     On March 10, 2014, NDTV communicated to Mr. Khatri that NTDV create a brand for the Business and that the brand will stand for Indian ethnicity and will be an outlet to experience the best in Indian ethnics.  NDTV further communicated that it would start with a physical store which will stock brands ranging from designer-wear to regional brands such as Weavers Studio from Kolkatta and Amethyst from Chennai.

15.     NDTV strategized that the Business should have options that are rare and not so easy to find online, and should induce customers to visit the Business's retail store to view collections, get measurements and alterations and engage in cluster buying.

16.     In addition, NDTV envisioned that the Business should host designers and celebrities to the Business's retail store to create buzz, and that NDTV will have a dedicated team managing the Business's social media and targeting online campaigns.

17.     NDTV also proposed to develop and manage television commercials.

18.     NDTV also proposed to create the Business's own label under which NDTV will manufacture products for sale by the Business and through other outlets.

19.     After further communications between Mr. Khatri and NDTV, on March 13, 2014, the CEO stated in an email proposal to Mr. Khatri that NDTV:

a.     will help Mr. Khatri create and market a brand — Ethnicity, which would be the experience centre in Chicago;

b.     is looking at about 7,000 – 10,000 sq. feet store which will stock the best of Indian ethnic products from Designer brands, to regional to artisan and handicrafts all under one roof;

c.     will supply the store concept, the online look and feel, the logo and merchandise from India as also market the store on television, social media and offline through public relations;

d.     will create and execute on ground events at the retail store from time to time with visits from designers and celebrities;

e.     will create a micro site on the Website;

f.     will keep a dedicated team in-house for ensuring steady traffic, all operational issues, marketing and stock replenishment from time to time;

g.     will help sell shop-in-shop to NTDV's designers and brands to help offset some costs as also create a "pull" factor for the retail store;

h.      will create a "be-a-designer" concept for customers to get production done in NDTV's design studio in India; and

i.      will market the retail store to all NDTV's customers to walk in for measurements, minor alterations or even get made to measure outfits created in the retail store.

20.    NDTV estimated that the total cost to start the Business was approximately $210,000 consisting of (i) $110,000 worth of goods in store which will be a mix of Designers, Regional Bestseller brands, Artisans and Handmade Rare products; (ii) $25,000 one time costs for concept, layout planning, branding and logo designing, microsite and technology for seamless integration; and (iii) $4,000 per month for daily marketing, advertising, promotions and logistics and administration.

21.    NDTV proposed further that Mr. Khatri and NDTV would sign an agreement, Mr. Khatri would advance twenty-five percent (25%) of the total cost, and the CEO would finalize the deal with Mr. Khatri in Chicago, Illinois. Upon visiting Chicago, the CEO rejected Mr. Khatri's proposed retail locations for the Business.

22.    Based on the March 13, 2014, communication from the CEO, Mr. Khatri drafted, and then forwarded to the CEO, a revenue and expense forecast for the Business.

23.    On March 14, 2014, Mr. Khatri asked the CEO to comment on a proposed brand name for the Business: "jalvaa."  The CEO rejected that brand name.

24.    On March 19, 2014, the CEO forwarded to Mr. Khatri a draft memorandum of understanding and stated that once "we sign this I can quickly come over and we can finalise all other issues including location, day to day operations, marketing plan, staff, merchandise, promotions, TV commercials etc."

25.     On March 21, 2014, Mr. Khatri signed the Memorandum of Understanding, dated March 20, 2014 (the "Agreement") and, as required under the Agreement, Mr. Khatri wire transferred $63,250 to NDTV (the "First Wire Transfer").  NDTV signed the Agreement in or about May 2014.

26.     On March 21, 2014, the CEO welcomed Mr. Khatri to the "NDTV family" and stated that he "will put together a team in house today to handle this and we will come back to you in 48 hours with a detailed time line till launch with roles and responsibilities."

27.     On March 22, 2014, the CEO communicate to Mr. Khatri that NDTV is targeting a June 1, 2014, launch date for the Business.

28.     On March 25, 2014, NDTV and Mr. Khatri agreed that "Rang" should be the brand name of the Business.

29.     On March 26, 2014, the CEO forwarded to Mr. Khatri the pre-launch marketing plan for the Business, consisting of:

**D-30 (30 days before store launch)**
- Start posting on Facebook, Twitter, Pinterest, Linkedin, GooglePlus, Instagram, Youtube, Vimeo.
- Launch website
- Coming soon ticker on Website + About us + Links to Social Media platforms
- Divert every visitor to Facebook Page
- 1st blogpost on Daily.indianroots.com
- Search Engine Optimization for the website
- 1st official press release
- Begin Online Reputation Management - Tracking the internet for any positive or negative reports about the store and tackling it before it poses an issue.

**D-20 (20 days before store launch)**
- 1st Teaser e-mail campaign to the Indian diaspora in US.
- Targeted posts on Indianroots Facebook page for Chicago residents.
- Creation of Facebook event(for the launch) on Indianroots Facebook page
- Creation of Google+ event(for the launch) on Indianroots Gplus page

**D-15 (15 days before store launch)**
- Rang TVC's start broadcasting on NDTV channels across the US network.

- Rang TVC on Facebook, Youtube, Website, Vimeo, Google Plus etc.

**D-10 (10 days before store launch)**
- 2st Teaser e-mail campaign to the Indian diaspora in US.
- Social Media campaign that explores the history of Indians in Chicago.
- Launch a video on Indianroots video channels + Rang video channels on an interview with Hemant Khatri about the store

**D-5 (5 days before store launch)**
- Launch ticker on NDTV's international channels
- Banner on NDTV.com for International Audience
- 3rd Launch e-Mailer to US database
- 2nd blogpost on Daily.Indianroots.com featuring Hemant Khatri, video + story.

**D-2 (2 days before store launch)**
- Homepage takeover for USA on NDTV.COM
- 2nd official press release before launch

**D-Day (Launch date)**
- Live Google Hangout with the Celebrity + Hemant Khatri for 20 mins on the launch of the store

**Post launch ideas:**

**Video footage:**
- Apart from brand specific TVC's, Indianroots will provide videos for the store - LFW footage, Designer Interviews, Google Hangout footage with designers etc.
- These can be constantly played inside the store on a screen.

**Check-ins**
- Free giveaways/10% discount/Cup of Masala Chai/A pair of Bangles to everyone who checks-in physically to the store on Facebook or Foursquare with a picture.

30.    On March 27, 2014, NDTV registered the Business's domains, rangstore.com and rangstore.in, on behalf of Mr. Khatri, and Mr. Khatri demanded NDTV transfer the domains to him.  NDTV has yet to transfer the domain to Mr. Khatri.

31.    On March 27, 2014, NDTV stated that "We HAVE to start placing orders tomorrow because of timelines as also the fact that the key designers will not take us seriously without us placing orders. This is critical as also YOUR profile as someone who will do a classy job and NOT a cheap one."

7

32.     On March 29, 2014, NDTV acknowledged receipt of the First Wire Transfer.

33.     On March 29, 2014, as required under the Agreement, Mr. Khatri wire transferred $126,500 to NDTV (the "Second Wire Transfer").

34.     On April 9, 2014, the CEO told Mr. Khatri that Mr. Khatri will receive production information with SKUs by April 10, 2014.  NDTV failed to forward that information to Mr. Khatri.

35.     Instead of opening the Business in Chicago, NDTV decided on or about April 19, 2014, to open a retail store in the Bay Area / Silicon Valley, California.

36.     On April 29, 2014, as required under the Agreement, Mr. Khatri wire transferred $60,000 to NDTV (the "Third Wire Transfer").

37.     In May 2014, NDTV demanded Mr. Khatri attend the TieCon expo to market the Business.  Instead of marketing the Business, however, the CEO tricked Mr. Khatri into marketing NDTV's "Indian Roots" brand name instead of the Business's "Rang" brand name.

38.     At the TieCon expo, Mr. Khatri was unable to sell merchandise under Business's "Rang" brand name, NDTV failed to communicate merchandise information to Mr. Khatri and the Mr. Khatri generated no revenue. NDTV improperly charged the costs of TieCon to Mr. Khatri.

39.     Issues similar to those from the TieCon expo arose at the WomenNow Trunk show to the detriment of Mr. Khatri.

40.     Despite making the First Wire Transfer, the Second Wire Transfer and the Third Wire Transfer, NDTV forwarded $63,000 of merchandise for the Business to California. That merchandise was stored at an individual's personal residence in California to be sold at TieCon or WomenNow Trunk show.  Mr. Khatri at not point had any custody, possession or control of

that merchandise.  NDTV sold approximately $500 of that merchandise at the WomenNow

Trunk Show, and forwarded to Mr. Khatri approximately $150 of profit.  Because the

merchandise was received by Mr. Khatri on a revolving credit basis under the Agreement, Mr.

Khatri requested NDTV accept a return of the merchandise as it was outdated.  NDTV refused to

accept the merchandise.

41.     By May 2014, NDTV failed to secure a location for the Business in Chicago, and

told Mr. Khatri that NDTV is "in discussion with landlady [in California] but please appreciate

that if we push too much too fast we wont get the right rental price which is crucial for us to

break even quickly. sushma and kricket are in discussion and we hope to close soon."

42.     In breach of the Agreement, NDTV rejected Mr. Khatri proposal to open the retail

store for the Business in Chicago, and NDTV had failed to secure a retail location for the

Business in California, by June 1, 2014.

43.     In June 2014, NDTV informs Mr. Khatri that the Business's "Rang" brand name

will no longer be used in the United States, and, instead, NDTV will use its "Indian Roots" brand

name in the US.  CEO tells Mr. Khatri that "Rang" will be only used as company name for

transactions on invoices, so "going forward we will refer to your entity as [Indian Roots] store –

California," and that "You are our franchisee and thats [sic] the arrangement that we will work

with in terms of structure."

44.     CEO also tells Mr. Khatri that NDTV "will active the microsite within a few days

and start sales online," and that "[b]y next week hopefully we would have concluded deal for

store too so then we can go all over town talking about our store opening, do a gala launch and

then just go full steam ahead."

45.     NDTV launched the microsite on June 10, 2014.

46.     In connection with securing a location for the Business, CEO tells Mr. Khatri that "NDTV as a group to understand that we are the leading media company with a 25-year legacy and we don't run away from anything."

47.     In connection with the TieCon expo, Mr. Khatri incurred fees on behalf of NDTV for which NDTV agreed to reimburse Mr. Khatri.  NDTV failed to reimburse Mr. Khatri for those fees.

48.     On June 17, 2014, www.rangstore.com goes live.

49.     By late June 2014, it was becoming clear to Mr. Khatri that NDTV was using Mr. Khatri for its benefit and to Mr. Khatri's detriment.

50.     On June 25, 2014, Mr. Khatri demanded that NDTV not process anything related to finance and merchandise until he gets a clear picture on current merchandise and finance, along with pending settlement of finances.

51.     On June 26, 2014, NDTV had failed to ship the total value of merchandise agreed to under the Agreement, and Mr. Khatri demanded NDTV return to him $100,000.

52.     NDTV never returned the $100,000 to Mr. Khatri.

53.     By late July 2014, NDTV had no intention of opening any retail store for the Business in the United States.  Instead, NDTV used the Business's "Rang" brand name, domain name, and other intellectual property, including social media pages, without authorization from Mr. Khatri.  NDTV also began to automatically forward visitors from www.rangstore.com to www.indiaroots.com.

54.     By September 1, 2014, NDTV was in complete breach of the Agreement by among other things submitting invoices for charges that were neither incurred nor agreed to in

the Agreement, by bringing down the Business's website and servers without sufficient notice to

Mr. Khatri and by failing to transfer the Business's domain to Mr. Khatri.

55.     NDTV also used its brand name on the Business's websites and social media

pages, including Facebook and Twitter, and, despite demand by Mr. Khatri, NDTV has refused

to give ownership permissions to Mr. Khatri for the Business's website, domain name, Facebook

and Twitter.

56.     The foregoing intellectual property is owned exclusively by Mr. Khatri.

57.     On February 3, 2015, Mr. Khatri properly provided notice of termination to

NDTV under the Agreement, and demanded immediate payment of the $250,000 wired to

NDTV by Mr. Khatri:

> I'm sorry to inform you that Rang would like to exit out from MOU due to
> following reasons.  If 15 days notice is mandatory then, please consider this email
> as 15 days notice. Please note that, the amount $250,000 (need to deduct custom
> duty and shipping) per MOU is due immediate within 15 days. Please settle the
> due amount within 15 days.
>
> •     **Lack of communication from Indian Roots/NDTV** - Rang has escalated
> this issue many time. However, there is no improvement on this. Rang has
> repeatedly follow up and reach out to IR/NDTV via whatsapp, email and phone
> calls.
>
> •     **Irresponsible behavior from Indian Roots/NDTV** - Indian Root has
> damaged the Rang brand including Business by bringing down the Rang site
> (rangstore.com) and try to take over Rang brand.
>
> •     **Non Compliance of MOU from Indian Roots/NDTV**
>     •     There were no cost mentioned in MOU for Online e-commerce
>     (rangstore.com) website. There were no communication either about
>     website cost. Afterwards, IR has added hidden cost to Rang account.
>     This is unethical business practice from Indian Roots.
>
>     •     There were no communication and approval about travel cost from
>     Rang. This is unethical and unauthorized transaction.
>
>     •     IR has dumped $100,000+ merchandise without retail store. This is
>     non-compliance of MOU. Why Indian roots has sent $100,000

merchandise when they knew that, there were no retail store so far. IR has also added the

- **360 degree U turn from Indian Roots/NDTV**
  - IR has confirmed shop within shop concept. Rang was ready to move forward with retail store and asked IR to fulfill their commitment, there were no response from IR so far.
  - IR has dumped $100,000+ merchandise to Rang.  Per MOU, Rang would get merchandise on revolving credit basis, when Rang ask to replenishment or refreshment, IR back out on this. This is MOU non compliance as well as unethical business practice.
  - IR has also added merchandise cost that Rang haven't received it. This is totally unethical business practice.

As I mentioned earlier, please settle the due amount within 15 days. Thanks.

58.   On February 13, 2015, the CEO responded to Mr. Khatri:

Kindly refer to the MoU dated 20th March, 2014 (MoU) and your email dated 3rd February, 2015 terminating the MoU.  Please note that we deny each and all averments contained in your email as being false and inaccurate. We also state that the purported termination of the MoU being without any cause is clearly illegal and therefore not enforceable. Indian Roots has complied with the terms of the MoU and in letter and spirit as is also borne out from all correspondence exchanged between us pursuant to execution of the MoU. However, you have failed to honour your obligations under the MoU and have wilfully defaulted/breached the terms thereof.

As far as the costs of the setting up of the online E-commerce website rangstore.com are concerned, you will also appreciate that such services were provided to you by Indian Roots upon instructions issued by you. Since this involved substantial amount of time, effort and expenses under various heads including travel etc, Indian Roots is entitled to be paid for such services and as stated before, this amount adds up to USD 19,000. You are requested to clear this outstanding at the earliest.

With regard to your request concerning settlement of accounts, kindly note that against the advance paid by you, Indian Roots has provided merchandise/goods which goods have been duly received by you. This amount has been paid against goods purchased by you and delivered to you and therefore you cannot escape your obligation to pay for them. We deny your request for any refund since no such refund is due to you.

59.   On February 19, 2015, Mr. Khatri responded to the CEO:

Kindly refer to the MoU dated 20th March, 2014 (MoU) and my email dated 3rd February, 2015 terminating the MoU.

Per MOU term 4.6, NDTV or Client shall have rights to terminate this MOU by serving a 15 days notice at anytime during the term of this MOU. It is not necessary to provide any cause for MOU termination. There is no service agreement either. We have provided the cause for courtesy purpose and will produce the supporting documents/artifacts, if necessary. Please read exact paragraph from MOU below.

> 4.6 NDTV or the Client shall have the right to terminate this MoU by a serving a 15 days notice at anytime during the term of this MoU. The consequences of termination will be finalised by both parties in the separate long form Service Agreement.

Please note that, the MOU is terminated today as per MOU and per MOU termination notification email. Per MOU, we have wire transferred advance $250,000 to IndiaRoots/NDTV, please settle $250,000 as MOU is no longer exists. Thanks.

60.     On February 25, 2015, the CEO responded to Mr. Khatri:

Dear Mr. Khatri

While denying the contents of your email under reply, we state that you have failed to make out a case for termination of the MoU. Further, we reiterate that Indian Roots has complied with the terms of the MoU and the consequent correspondence exchanged between us, while you have violated the terms thereof.

While you have once again reiterated your demand for return of USD 250,000 despite the same not being due and payable to you, you have offered no explanation for your failure to pay Indian Roots the amount of USD 19,000 for services provided pursuant to your specific instructions. We deny that an amount of USD 250,000 is due and payable to you by Indian Roots and it is infact you who are liable to compensate Indian Roots to the extent of USD 19,000 for services provided to you/expenses incurred at your request.

61.     On March 9, 2015, Mr. Khatri responded to the CEO:

Dear Mr. Asawa,
Thanks for your email,

From Rang perspective, the MOU was terminated on 19th February and we do not have any clue what are you talking about.

•       There was only one signed and single source of truth document, MoU.
•       Per MOU, any party can terminate the MoU at any time by serving the 15 days

notice. Rang served 15 days termination notice on 3rd February. That means, the MOU between Rang and IR was terminated on 19th February' 2015.

- Please let us know which document or MOU term are you referring to.  We do not have any clue or haven't discussed anything about this.

**Rang has wire transferred the $250,000 as advance to IndianRoots per MoU terms. As MoU is no longer exists, kindly return the advance back to Rang. This is Rang's third reminder.**

- Please let us know the address to return the inventories/merchandise.
- Regarding $19,000, we have explained this several times in the past as well as in termination email dated on 3rd February. Please refer my 3rd February email or below snapshot of email.  There is no settlement pending from Rang.

   Snapshot of 3rd February Email:
   ============================
   There were no cost mentioned in MOU for Online e-commerce (rangstore.com) website. There were no communication either about website cost. Afterwards, IR has added hidden cost to Rang account. This is unethical business practice from Indian Roots.

   Please feel free to contact us in case of any questions.

62.   On March 17, 2015, the CEO responded to Mr. Khatri:

   Without prejudice

   Dear Mr. Khatri

   Ref. to your email of 9th March, 2015 in response to which we state as follows:

- We once again reiterate that even though it was agreed in Clause 4.6 of the MoU that either party shall have the right to terminate the MoU by serving a 15 days notice, you have failed to make out a case of default on IR's part which would lead you to terminate the MoU. It is in this background that we assert that the termination is illegal.
- Further, IR has performed all its obligations which it was obligated to perform in the first year of the MoU. Since the amount of USD 2,50,000 was agreed to be paid as costs for the first year obligations of IR, the same have been adjusted against the services/merchandise provided by IR and we make it clear that no amounts remain unadjusted/refundable to you. Infact, IR is entitled to be paid an amount of USD 19,000 towards services provided by us as well as towards expenses such as travel etc for setting up of website rangstore.com, which amount remains outstanding and payable by you.
- The fact that the website rangstore.com was setup and operationalised at your instance is not open to dispute. You have acknowledged IR's efforts in this regard

in your email dated 17th July, 2014, a copy of which is attached. Further, you have also acknowledged in your email the receipt of merchandise, which further proves IR's contention that it has performed the MoU in toto.

In the above background, you are requested to settle IR's account by paying the outstanding amount of USD 19,000. Further, we reserve all our rights and contentions in regard to the MoU and consequences arising out of the illegal termination thereof.

63.     On April 23, 2015, Mr. Khatri, through counsel, forwarded a notice for demand of monies pursuant to Notice of Termination.

64.     On May 15, 2015, NDTV, through counsel, responded to Mr. Khatri's April 23, 2015, notice.

65.     On June 4, 2015, Mr. Khatri, through counsel, responded to NDTV's May 15, 2015, notice.

66.     To date, NDTV has refused to return any monies to Mr. Khatri, has continued to use Mr. Khatri's intellectual property and trademark without authorization, has continued to confuse consumers in the market by using Mr. Khatri's intellectual property and trademark, and has continued to confuse consumers in the market by using NDTV's intellectual property and trademark in connection with the Business.

**<u>FIRST COUNT</u>**
**(Breach of Contract)**

67.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

68.     Plaintiff has performed his obligations under the Agreement.

69.     The Defendant has breached a material term of the Agreement.

70.     As a result, Plaintiff has been damaged in an amount not less than $1,000,000.

## SECOND COUNT
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

71.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

72.    The duty of good faith and fair dealing is a covenant implied into the Agreement.

73.    Defendant acted in bad faith to impede and block Plaintiff's right to receive benefits that Plaintiff reasonably expected to receive under the Agreement.

74.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, as a result, Plaintiff has been damaged in an amount not less than $1,000,000.

## THIRD COUNT
**(Unjust Enrichment)**

75.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

76.    Defendant is unjustly retaining benefits to which it is not entitled at Plaintiff's expense and as to which equity and good conscience militate against permitting Defendant to retain.

77.    As a result, Plaintiff has been damaged in an amount not less than $1,000,000.

## FOURTH COUNT
**(Conversion)**

78.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

79.    Defendant has assumed and exercised, without authorization from Plaintiff, the right of ownership over goods or personal chattels belonging to the Plaintiff, to the exclusion of Plaintiff's rights.

80.    As a result, Plaintiff has been damaged in an amount not less than $1,000,000.

## FIFTH COUNT
### (Violation of the Illinois Uniform Deceptive Trade Practices Act)

81.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

82.     Under Section 2 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, Defendant engaged in a deceptive trade practice in the course of its business.

83.     Defendant's conduct was unscrupulous, oppressive, unfair and deceptive.

84.     Defendant intended that Plaintiff rely on the deception.

85.     Defendant's deception occurred in the course of conduct involving trade or commerce.

86.     Plaintiff has suffered actual damages proximately caused by the Defendant's conduct not less than $1,000,000.

## SIXTH COUNT
### (Violation of Illinois Franchise Disclosure Act of 1987)

87.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

88.     The Agreement was a franchise agreement between Plaintiff and the Defendant.

89.     The Defendant failed to register the franchise under the Illinois Franchise Disclosure Act of 1987 (the "Act").

90.     The Defendant failed to deliver a disclosure statement to Plaintiff under the Act.

91.     In connection with the offer or sale of a franchise to Plaintiff in Illinois, the Defendant employed a device, scheme or artifice to defraud the Plaintiff; made an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;

and engaged in any act, practice, or course of business which operates or would operate as a fraud or deceit upon Plaintiff.

92.     Defendant violated the Act and, as a result, Plaintiff has been damaged in an amount not less than $1,000,000.

## SEVENTH COUNT
### (Unfair Competition)

93.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

94.     Defendant made a false statement of fact in a commercial advertisement about its own or another's product.

95.     That statement actually deceived or has the tendency to deceive a substantial segment of its audience.

96.     The deception is material, in that it is likely to influence the purchasing decision.

97.     The defendant caused its false statement to enter interstate commerce.

98.     The plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

99.     As a result, Plaintiff has been damaged in an amount not less than $1,000,000.

## EIGHTH COUNT
### (Violation of the Lanham Act)

100.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

101.    By reason of the foregoing, Plaintiff hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

with regards to the false designation of origin and false descriptions and representations in commerce.

102.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the damages sustained by Plaintiff as a result of defendant's acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of defendant's acts.

103.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from defendant the gains, profits and advantages that defendant has obtained as a result of defendant's acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages defendant has obtained by reason of defendant's acts.

104.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the costs of this action. Moreover, Plaintiff is informed and believes, and on that basis alleges, that defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees.

**NINTH COUNT**
**(Common law trademark infringement)**

105.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

106.    As a result, Plaintiff has been damaged in an amount not less than $1,000,000.

**TENTH COUNT**
**(Fraud)**

107.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

108.    Defendant knowingly made a false statement of material fact to Plaintiff with the intent to induce Plaintiff to act.

109.    Plaintiff acted in justifiable reliance on Defendant's false statement of fact.

110.    As a result, Plaintiff has been damaged in an amount not less than $1,000,000.

**WHEREFORE,** Plaintiff Hemant Khatri hereby demands judgment enter in its favor and against Defendant NDTV Ethnic Retail Limited for:

1.    Preliminary and permanent injunction;

2.    Specific performance;

3.    Compensatory damages;

4.    An accounting;

5.    Restitution;

6.    The imposition of a constructive trust;

7.    Punitive damages;

8.    Attorneys' fees;

9.    Interest;

10.    Costs; and

11.    All such other and further relief as the Court deems just, equitable and proper.

Dated: January 25, 2015
       Monroe, Connecticut

Respectfully submitted,

GORA LLC


By:    s/ Richard S. Gora
      Richard S. Gora
      Gora LLC
      30 Quarter Horse Drive
      Monroe, CT 06468
      Tel.: 203-424-8021
      Fax: 203-549-0410
      Email: Rich@goralaw.com

*Attorneys for Plaintiff*
*Hemant Khatri*